UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAMES M. BAKER, On Behalf of Himself and All Others Similarly Situated, | ) ) ) | Civil Action No. 1:05-cv-00272-GMS |
| Plaintiff, | ) ) ) | <u>CLASS ACTION</u> |
| vs. | ) ) | |
| MBNA CORP., et al., | ) ) | |
| Defendants. | ) ) ) | |
| ROCHELLE PHILLIPS, On Behalf of Herself and All Others Similarly Situated, | ) ) ) | Civil Action No. 1:05-cv-00277-GMS |
| Plaintiff, | ) ) ) | <u>CLASS ACTION</u> |
| vs. | ) ) | |
| MBNA CORP., et al., | ) ) | |
| Defendants. | ) ) ) | |

[Caption continued on following page.]

MEMORANDUM IN SUPPORT OF THE MOTION OF CITY OF DEERFIELD BEACH FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF SELECTION OF LEAD AND LIAISON COUNSEL

**JULY 5, 2005**

| | |
|---|---|
| ROBERT WILKINS, Individually and On Behalf of All Others Similarly Situated, ) ) ) | Civil Action No. 1:05-cv-00287-GMS |
| Plaintiff, ) | CLASS ACTION |
| vs. ) ) | |
| MBNA CORP., et al., ) ) | |
| Defendants. ) ) | |

| | |
|---|---|
| LEONARD BRONSTEIN, On Behalf of Himself and All Others Similarly Situated, ) ) | Civil Action No. 1:05-cv-00289-GMS |
| Plaintiff, ) | CLASS ACTION |
| vs. ) ) | |
| MBNA CORP., et al., ) ) | |
| Defendants. ) ) | |

| | |
|---|---|
| GREG PENN, ) | Civil Action No. 1:05-cv-00293-GMS |
| Plaintiff, ) ) | CLASS ACTION |
| vs. ) | |
| MBNA CORP., et al., ) ) | |
| Defendants. ) ) | |

| | |
|---|---|
| CLIFFORD W. JONES, On Behalf of Himself and All Others Similarly Situated, ) ) | Civil Action No. 1:05-cv-00316-GMS |
| Plaintiff, ) | CLASS ACTION |
| vs. ) ) | |
| MBNA CORP., et al., ) ) | |
| Defendants. ) ) | |

[Caption continued on following page.]

MICHAEL D. BLUM,                          )    Civil Action No. 1:05-cv-00372-GMS
                                          )
                          Plaintiff,      )    CLASS ACTION
                                          )
            vs.                           )
                                          )
MBNA CORP., et al.,                       )
                                          )
                          Defendants.     )
                                          )
_____       )

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................................1

II.   FACTUAL BACKGROUND ................................................................2

III.  ARGUMENT................................................................................................4

    A.    THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL
    PURPOSES................................................................................................4

    B.    CITY OF DEERFIELD BEACH SHOULD BE APPOINTED
    LEAD PLAINTIFF................................................................................5

        1.    The Procedure Required by the PSLRA .......................................5

        2.    City of Deerfield Beach Satisfies the "Lead Plaintiff"
        Requirements of the Exchange Act................................................6

            a.    City of Deerfield Beach Has Complied with the
            Exchange Act and Should Be Appointed Lead
            Plaintiff ................................................................................6

            b.    City of Deerfield Beach Is Precisely the Type of
            Lead Plaintiff Congress Envisioned When It Passed
            the PSLRA ............................................................................7

            c.    City of Deerfield Beach Has the Requisite Financial
            Interest in the Relief Sought by the Class ..........................7

            d.    City of Deerfield Beach Otherwise Satisfies Rule 23......................8

    C.    THE COURT SHOULD APPROVE CITY OF DEERFIELD
    BEACH'S CHOICE OF COUNSEL ................................................10

IV.   CONCLUSION................................................................................................10

# TABLE OF AUTHORITIES

**Page**

## CASES

*Andrews v. Bechtel Power Corp.*,
   780 F.2d 124 (1st Cir. 1985)........................................................................................9

*Ferrari v. Impath, Inc.*,
   No. 03 Civ. 5667, 2004 U.S. Dist. LEXIS 13898
   (S.D.N.Y. July 15, 2004) ...........................................................................................1

*Greebel v. FTP Software*,
   939 F. Supp. 57 (D. Mass. 1996) ...............................................................................6

*Johnson v. Celotex Corp.*,
   899 F.2d 1281 (3d Cir. 1990).....................................................................................5

*Lax v. First Merchants Acceptance Corp.*,
   1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997)..............................................8

*Modell v. Eliot Sav. Bank*,
   139 F.R.D. 17 (D. Mass. 1991)...................................................................................9

*Phillips v. Joint Legislative Comm. on Performance & Expenditure Review*,
   637 F.2d 1014 (5th Cir. 1981) ....................................................................................9

*Priest v. Zayre Corp.*,
   118 F.R.D. 552 (D. Mass. 1988)..................................................................................9

*Rossini v. Ogilvy & Mather, Inc.*,
   798 F.2d 590 (2d Cir. 1986).......................................................................................8

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
   §78u-4(a)(1) ...............................................................................................................5
   §§78u-4(a)(3) ..................................................................................................5, 6, 8, 10
   §78(j)...........................................................................................................................1

**Page**

17 C.F.R.
    §240.10b-5 ...................................................................................................................1


## FEDERAL RULES OF CIVIL PROCEDURE

    Rule 10b-5...............................................................................................................1
    Rule 23 ..........................................................................................................*passim*
    Rule 23(a).................................................................................................................8
    Rule 23(a)(3).............................................................................................................8
    Rule 23(a)(4).............................................................................................................9
    Section 21D(a)(3)......................................................................................................1


## LEGISLATIVE HISTORY

Conference Report:
H.R. Conf. Rep. No. 104-369, at 34 (1995),
    reprinted in 1995 U.S.C.C.A.N. 679, 733.........................................................7

## I.    PRELIMINARY STATEMENT

Presently pending before this Court are at least seven-related securities class action lawsuits (the "Actions")[1] brought on behalf of all those who purchased or otherwise acquired MBNA Corp. ("MBNA" or the "Company") shares between January 20, 2005 and April 21, 2005[2], inclusive (the "Class Period") and allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") (15 U.S.C. §78(j)(b) and 78(t)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

Institutional Investor City of Deerfield Beach Non-Uniform Employees Retirement Plan ("City of Deerfield Beach") hereby moves this Court for an order to: (i) consolidate the Actions; (ii) appoint City of Deerfield Beach as Lead Plaintiff in the Actions under Section 21D(a)(3)(B) of the Exchange Act; and (iii) approve City of Deerfield Beach's selection of the law firm of Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Lerach Coughlin") to serve as Lead Counsel and the law firm of Rosenthal, Monhait, Gross & Goddess, P.A. ("Rosenthal Monhait") to serve as Liaison Counsel.

This motion is made on the grounds that City of Deerfield Beach is the most adequate plaintiff, as defined by the PSLRA.  City of Deerfield Beach is precisely the type of institutional investor that Congress sought to summon and empower when it enacted the PSLRA.  *See Ferrari v. Impath, Inc.,* No. 03 Civ. 5667, 2004 U.S. Dist. LEXIS 13898, *10

---

[1]    Concurrent with the filing of this motion, City of Deerfield Beach is filing a similar motion in the Southern District of New York, where additional related actions alleging the same violations of the federal securities laws are pending.

[2]    The only action alleging a different Class Period, the action captioned *Thomas J. Cussen vs. MBNA Corp., et al.,* Civil Action No. 1:05-cv-00389-GMS, has been voluntarily dismissed.

- 1 -

(S.D.N.Y. July 15, 2004) (holding that the purpose behind the PSLRA is best achieved by encouraging institutional investors to serve as lead plaintiffs). Moreover, as an institutional investor, City of Deerfield Beach is accustomed to acting as a fiduciary and its experience in legal and financial matters will substantially benefit the class.

City of Deerfield Beach suffered losses of $36,530.52 in connection with its purchases of thousands of MBNA shares during the Class Period. *See* Goddess Decl. Ex. B.[3] To the best of our knowledge, this is the greatest loss sustained by any moving class member or class member group who has brought suit or filed an application to serve as Lead Plaintiff in these Actions. In addition, City of Deerfield Beach, for the purposes of this motion, adequately satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure in that its claims are typical of the claims of the putative class and that it will fairly and adequately represent the interests of the class.

## II.    FACTUAL BACKGROUND [4]

MBNA is an international financial services company providing lending, deposit, and credit insurance products and services to its customers.

The complaint charges MBNA and certain of its officers and directors with violations of the Securities Exchange Act of 1934. The complaint alleges that on January 21, 2005, the start of the Class Period, MBNA issued the first earnings forecast in the Company's history, projecting an ongoing 12% earnings increase, with a 10% increase in 2005 earnings over 2004 earnings. Defendants said MBNA would reach this target because the Company had

---

[3]    References to the "Goddess Decl., Ex. ___ " are to the exhibits attached to the accompanying Declaration of Jeffrey S. Goddess dated July 5, 2005, and submitted herewith.

[4]    These facts are drawn from the allegations in the complaint captioned *James M. Baker vs. MBNA Corp., et al.*, Civil Action No. 1:05-cv-00272-GMS (the "*Baker* Action").

already drastically reduced its own reliance on insidious no-interest loans, rendering its own loan portfolio more profitable than that of its competitors. Defendants also projected a 20%+ increase in Return on Equity. Defendants' earnings per share ("EPS") estimate for 2005 was $2.36 per share, which was 10% above the Company's 2004 EPS. These projections were being made nearly one-third of the way into the first quarter of 2005 and would be repeated and detailed at the Company's January 21, 2005 and February 9, 2005 investor conferences. On April 21, 2005, defendants disclosed that MBNA had earned only $0.02 per share in the first quarter of 2005 – a 94% decline from the $0.59 per share it reported in the fourth quarter of 2004 – and that its 2005 EPS growth would be "significantly below" its prior 10% growth estimate.

According to the complaint, the true facts, which were known by each of the defendants but concealed from the investing public during the Class Period, were as follows: (a) that the Company had been experiencing "unexpectedly high payment volumes from U.S. credit card customers" during the first quarter of 2005, reducing managed loans in the quarter "more than in prior years"; (b) that, of the prepays, the higher interest rate borrowers were prepaying more than the lower interest rate borrowers, resulting in the prepays having a more adverse impact on the Company's yield on managed loans; (c) that MBNA was suffering from an unseasonably sharp contraction in loans during the first quarter of 2005 causing total managed loans to decrease; (d) that the Company had been aggressively recognizing gains on sales of securitized no-interest loan receivables through off-balance sheet funding structures; (e) that MBNA was experiencing higher-than-expected delinquencies during the first quarter of 2005; (f) that the Company had reversed its margin-protection strategy of reducing reliance on no-interest loans and teaser promotions and was instead increasing its offering of no-interest loans, which, by defendants' own admissions, would significantly

- 3 -

reduce future earnings; (g) that losses on loan receivables and managed loans had increased; (h) that approximately 50% of MBNA's receivables were on variable floating interest rates while approximately 80% of the Company's funding was tied to the London Inter Bank Offering Rate ("LIBOR"), such that the Company's cost of funds was increasing more rapidly than the interest payments it was receiving from borrowers when interest rates increased; (i) that due to the increase in prepays, the interest-only securitization strip securities valued on the Company's books at $1.3 billion were overstated; and (j) that the Company's previously announced first quarter 2005 restructuring charge had doubled. As a result of these false statements, MBNA's stock traded at artificially inflated levels during the Class Period which permitted the Company's top officers and directors to sell more than $75 million worth of their personally-owned shares.

Following the Company's April 21, 2005 disclosures concerning its business operations, financial results and reduced 2005 earnings expectations, the Company's stock price plummeted from its closing price of $23.11 per share on the close of April 20, 2005, to below $19 per share on extremely high trading volume of 51 million shares.

## III.   ARGUMENT

### A.   THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

The Actions each assert class claims on behalf of the purchasers of MBNA shares for alleged violations of the Exchange Act during the relevant time period. The Actions name virtually the same defendants and involve the same factual and legal issues. They are each brought by investors who purchased MBNA shares during the relevant time period in reliance on the integrity of the market for such securities and were injured by the fraud on the market that was perpetrated through the issuance of materially false and misleading statements and concealment of material information, thus artificially inflating the prices of

- 4 -

MBNA securities at all relevant times. Consolidation is appropriate where there are actions involving common questions of law or fact. Fed. R. Civ. P. 42(a). *See Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (3d Cir. 1990). That test is met here and, accordingly, the Actions should be consolidated.

### B.  CITY OF DEERFIELD BEACH SHOULD BE APPOINTED LEAD PLAINTIFF

#### 1.  The Procedure Required by the PSLRA

The PSLRA has established a procedure that governs the appointment of a Lead Plaintiff in "each private action arising under the [Securities Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as Lead Plaintiff. 15 U.S.C. §§78u-4(a)(3)(A)(i). Plaintiff in the *Baker* Action caused the first notice regarding the pendency of these actions to be published on *Business Wire*, a national, business-oriented newswire service, on May 5, 2005. *See* Goddess Decl. Ex. A. Within 60 days after publication of the notice, any person or group of persons who are members of the proposed class may apply to the Court to be appointed as Lead Plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. §§78u-4(a)(3)(A) and (B).

Second, the PSLRA provides that, within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as Lead Plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. §78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

- 5 -

[T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that

(aa) has either filed the complaint or made a motion in response to a notice . . .

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. 78u-4(a)(3)(B)(iii).  *See generally Greebel v. FTP Software*, 939 F. Supp. 57, 64 (D. Mass. 1996).

### 2. City of Deerfield Beach Satisfies the "Lead Plaintiff" Requirements of the Exchange Act

#### a. City of Deerfield Beach Has Complied with the Exchange Act and Should Be Appointed Lead Plaintiff

The time period in which class members may move to be appointed Lead Plaintiff herein under 15 U.S.C. §78u-4(a)(3)(A) and (B) expires on July 5, 2005. Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice (published on May 5, 2005), City of Deerfield Beach timely moves this Court to be appointed Lead Plaintiff on behalf of all members of the class.

City of Deerfield Beach has duly signed and filed a certification stating that it is willing to serve as the representative party on behalf of the class. *See* Goddess Decl. Ex. C. In addition, City of Deerfield Beach has selected and retained competent counsel to represent it and the class. *See* Goddess Decl. Exs. D-E. Accordingly, City of Deerfield Beach has satisfied the individual requirements of 15 U.S.C. §78u-4(a)(3)(B) and is entitled to have its application for appointment as Lead Plaintiff and selection of Lead and Liaison Counsel as set forth herein, considered and approved by the Court.

**b.    City of Deerfield Beach Is Precisely the Type of Lead Plaintiff Congress Envisioned When It Passed the PSLRA**

The Congressional objective in enacting the lead plaintiff provisions was to encourage large, organized institutional investors to play a more prominent role in securities class actions. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions.").

Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because institutional investors with a large financial stake are more apt to effectively manage complex securities litigation. City of Deerfield Beach, as an institutional investor, is precisely the type of lead plaintiff Congress envisioned when it passed the PSLRA. *See id.* ("Institutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.")

**c.    City of Deerfield Beach Has the Requisite Financial Interest in the Relief Sought by the Class**

During the Class Period, as evidenced by, among other things, the accompanying signed certification, *see* Goddess Decl. Ex. C, City of Deerfield Beach purchased thousands of MBNA shares in reliance upon the materially false and misleading statements issued by the defendants and were injured thereby. In addition, City of Deerfield Beach incurred a substantial $36,530.52 loss on its transactions in MBNA shares. City of Deerfield Beach thus has a significant financial interest in this case. Therefore, City of Deerfield Beach

- 7 -

satisfies all of the PSLRA's prerequisites for appointment as Lead Plaintiff in this action and

should be appointed Lead Plaintiff pursuant to 15 U.S.C. 78u-4(a)(3)(B).

### d.     City of Deerfield Beach Otherwise Satisfies Rule 23

According to 15 U.S.C. §78u-4(a)(3)(B), in addition to possessing the largest

financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise

satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a)

provides that a party may serve as a class representative only if the following four

requirements are satisfied: (1) the class is so numerous that joinder of all members is

impracticable; (2) there are questions of law or fact common to the class; (3) the claims or

defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two – typicality and adequacy

directly address the personal characteristics of the class representative. Consequently, in

deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the

typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining

requirements until the Lead Plaintiff moves for class certification. *Lax v. First Merchants

Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866 at *20, (N.D. Ill. Aug. 6, 1997). City of

Deerfield Beach satisfies both the typicality and adequacy requirements of Rule 23, thereby

justifying its appointment as Lead Plaintiff.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be

typical of those of the class. Typicality exists where the plaintiffs' claims arise from the

same series of events and are based on the same legal theories as the claims of all the class

members. *See Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

Typicality does not require that there be no factual differences between the class

- 8 -

representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical. *See Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988) ("With respect to typicality under Rule 23(a)(3), plaintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent [class] members") (citations omitted). The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical. *Phillips v. Joint Legislative Comm. on Performance & Expenditure Review*, 637 F.2d 1014, 1024 (5th Cir. 1981).

City of Deerfield Beach satisfies this requirement because, just like all other class members, it: (1) purchased MBNA shares during the Class Period; (2) purchased MBNA shares in reliance upon the allegedly materially false and misleading statements issued by defendants; and (3) suffered damages thereby. Thus, City of Deerfield Beach's claims are typical of those of other class members since its claims and the claims of other class members arise out of the same course of events. Under Rule 23(a)(4) the representative parties must also "fairly and adequately protect the interests of the class." The PSLRA directs this Court to limit its inquiry regarding the adequacy of City of Deerfield Beach to represent the class to the existence of any conflicts between the interest of City of Deerfield Beach and the members of the class. The standard for adequacy of representation under Rule 23(a)(4) is met by: (1) the absence of potential conflict between the named plaintiffs and the class members; and (2) the class representatives' choice of counsel who are qualified, experienced and able to vigorously conduct the proposed litigation. *See Modell v. Eliot Sav. Bank*, 139 F.R.D. 17, 23 (D. Mass. 1991) (citing *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985)).

- 9 -

Here, City of Deerfield Beach is an adequate representative of the class. As evidenced by the injuries suffered by City of Deerfield Beach, who purchased MBNA shares at prices allegedly artificially inflated by defendants' materially false and misleading statements, the interests of City of Deerfield Beach are clearly aligned with the members of the class, and there is no evidence of any antagonism between City of Deerfield Beach's interests and those of the other members of the class. Further, City of Deerfield Beach has taken significant steps which demonstrate it will protect the interests of the class: it has retained competent and experienced counsel to prosecute these claims. In addition, as shown below, City of Deerfield Beach's proposed Lead and Liaison Counsel are highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, City of Deerfield Beach *prima facie* satisfies the commonality, typicality and adequacy requirements of Rule 23 for the purposes of this motion.

### C.    THE COURT SHOULD APPROVE CITY OF DEERFIELD BEACH'S CHOICE OF COUNSEL

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), the proposed lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class he seeks to represent. In that regard, City of Deerfield Beach has selected the law firm of Lerach Coughlin as Lead Counsel and the law firm of Rosenthal Monhait as Liaison Counsel, firms which have substantial experience in the prosecution of shareholder and securities class actions. *See* Goddess Decl. Exs. D-E. Accordingly, the Court should approve City of Deerfield Beach's selection of counsel.

## IV.    CONCLUSION

For all the foregoing reasons, City of Deerfield Beach respectfully requests that the Court: (i) consolidate the Actions; (ii) appoint City of Deerfield Beach as Lead Plaintiff in

the Actions; (iii) approve its selection of Lead and Liaison Counsel as set forth herein; and

(iv) grant such other relief as the court may deem just and proper.

DATED:  July 5, 2005

ROSENTHAL, MONHAIT, GROSS
& GODDESS, P.A

JOSEPH A. ROSENTHAL (Del. No. 234)
JEFFREY S. GODDESS (Del. No. 630)
JESSICA ZELDIN (Del. No. 3558)

919 Market Street, Suite 1401
Wilmington, DE 19801
Telephone: 302/656-4433
302/658-7567 (fax)

[Proposed] Liaison Counsel

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
PAUL J. GELLER
197 S. Federal Highway, Suite 200
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MARIO ALBA, JR.
200 Broadhollow Road, Suite 406
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

[Proposed] Lead Counsel for Plaintiffs

I:\MBNA\LP Motion\DE\LP Memo.doc

- 11 -

## CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2005, I electronically filed (1) Motion For Consolidation, Appointment As Lead Plaintiffs And For Approval Of Selection Of Lead Counsel; (2) Declaration Of Jeffrey S. Goddess, In Support Of The Motion Of City Of Deerfield Beach For Consolidation, Appointment As Lead Plaintiffs And For Approval Of Selection Of Lead Counsel; and (3) Memorandum In Support Of The Motion Of City Of Deerfield Beach For Consolidation, Appointment As Lead Plaintiffs And For Approval Of Selection Of Lead Counsel, using CM/ECF, which will send notification of such filing to the following:

> Seth D. Rigrodsky, Esquire
> Milberg Weiss Bershad & Schulman LLP
> 919 Market Street, Suite 411
> Wilmington, DE 19801
> srigrodsky@milbergweiss.com

> Ralph Nicholas Sianni, Esquire
> Milberg Weiss Bershad & Schulman LLP
> 919 Market Street, Suite 411
> Wilmington, DE 19801
> rsianni@milbergweiss.com

> A. Zachary Naylor, Esquire
> Chimicles & Tikellis LLP
> One Rodney Square
> P. O. Box 1035
> Wilmington, DE 19899
> zacharynaylor@chimicles.com

> Joseph N. Gielata, Esquire
> 501 Silverside Road, Suite 90
> Wilmington, DE 19809
> joe@gielatalaw.com

I further certify that on July 5, 2005, I have caused the above-listed documents to be sent by first-class mail to all additional counsel on the attached service list.

Jeffrey S. Goddess (Del. Bar No. 630)
Rosenthal, Monhait, Gross
 & Goddess, P.A.
Suite 1401, 919 Market Street
P. O. Box 1070
Wilmington, DE 19899-1070
(302) 656-4433
jgoddess@rmgglaw.com

MBNA CORP. (DE)
Service List - 7/1/2005     (05-0098D)
Page 1 of 3

**Counsel For Defendant(s)**

Richard C. Pepperman II
Sullivan & Cromwell LLP
125 Broad Street
New York, NY  10004-2498
  212/558-4000
  212/558-3588 (Fax)

Richard H. Morse
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
The Brandywine Building
Wilmington, DE  19899
  302/571-6600
  302/571-1253 (Fax)

**Counsel For Plaintiff(s)**

Joshua M. Lifshitz
Bull & Lifshitz LLP
18 E. 41st Street
New York, NY  10017
  212/213-6222
  212/213-9405 (Fax)

Frank J. Johnson
Johnson Law Firm, A P.C.
402 W. Broadway, 27th Floor
San Diego, CA  92101
  619/230-0063
  619/230-1839 (Fax)

Deborah R. Gross
Robert P. Frutkin
Law Offices Bernard M. Gross, P.C.
100 Penn Square East, Suite 450
Juniper and Market Streets
Philadelphia, PA  19107
  215/561-3600
  215/561-3000 (Fax)

Charles J. Piven
Law Offices of Charles J. Piven, P.A.
The World Trade Center-Baltimore
401 East Pratt Street, Suite 2525
Baltimore, MD  21202
  410/332-0030
  410/685-1300 (Fax)

James M. Orman
Law Offices of James M. Orman
1845 Walnut Street, 14th Floor
Philadelphia, PA  19103
  215/523-7800
  215/523-9290 (Fax)

Paul J. Geller
Lerach Coughlin Stoia Geller Rudman &
Robbins LLP
197 S. Federal Highway, Suite 200
Boca Raton, FL  33432
  561/750-3000
  561/750-3364 (Fax)

MBNA CORP. (DE)
Service List - 7/1/2005    (05-0098D)
Page 2 of 3

Samuel H. Rudman
David A. Rosenfeld
Mario Alba, Jr.
Lerach Coughlin Stoia Geller Rudman &
Robbins LLP
200 Broadhollow Road, Suite 406
Melville, NY 11747
   631/367-7100
   631/367-1173 (Fax)

Seth D. Rigrodsky
Ralph N. Sianni
Brian D. Long
Milberg Weiss Bershad & Schulman LLP
919 North Market Street, Suite 411
Wilmington, DE 19801
   302/984-0597
   302/984-0870 (Fax)

David R. Scott
Scott + Scott, LLC
108 Norwich Avenue
Colchester, CT 06415
   860/537-5537
   860/537-4432 (Fax)

Karen Hanson Riebel
Lockridge Grindal Nauen P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
   612/339-6900
   612/339-0981 (Fax)

Steven G. Schulman
Peter E. Seidman
Milberg Weiss Bershad & Schulman LLP
One Pennsylvania Plaza
New York, NY 10119
   212/594-5300
   212/868-1229 (Fax)

Marc A. Topaz
Richard A. Maniskas
Tamara Skvirsky
Schiffrin & Barroway, LLP
280 King of Prussia Road
Radnor, PA 19087
   610/667-7706
   610/667-7056 (Fax)

Arthur L. Shingler III
Scott + Scott, LLC
401 B Street, Suite 307
San Diego, CA 92101
   619/233-4565
   619/233-0508 (Fax)

MBNA CORP. (DE)

Service List - 7/1/2005     (05-0098D)

Page 3 of 3

Stephen A. Weiss
Eric T. Chaffin
Roopal  Luhana
Seeger Weiss LLP
1 William Street
New York, NY  10004-2502
   212/584-7000
   212/584-0799 (Fax)

Lester L. Levy
Michael A. Schwartz
Caroline S. Curtiss
Wolf Popper LLP
845 Third Avenue
New York, NY  10022
   212/759-4600
   212/486-2093 (Fax)